# 1. VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Case: 1:25-cv-04291
Assigned To : McFadden, Trevor N.
Assign. Date : 12/10/2025
Description: TRO/PI (D-DECK)

**DAVID MYTYCH,**
an individual,
Plaintiff,

v.

**NATIONAL PARK SERVICE,**
an agency of the United States;

**FRANK LANDS,** in his official capacity
as Deputy Director of Operations for the National Park Service;

**JENNIFER T. NERSESIAN,** in her official capacity
as Regional Director, National Capital Region, National Park Service;

**KEVIN GRIESS,** in his official capacity
as Superintendent, National Mall and Memorial Parks;

**CHAD TINNEY,** in his official capacity
as Deputy Superintendent, National Mall and Memorial Parks;

Defendants.

Civil Action No. _____

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff David Mytych ("Plaintiff") alleges as follows:

## INTRODUCTION

1. This action seeks declaratory and injunctive relief to prevent Defendants from unlawfully removing Plaintiff and the individuals he organizes under the banner "FLARE USA" ("FLARE") from Columbus Plaza/Columbus Circle in front of Union Station in Washington, D.C., where they have maintained a continuous, peaceful First Amendment demonstration since May 11, 2025, concerning matters of urgent national importance and constitutional accountability of government officials.

**RECEIVED**

DEC 1 0 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

2. Plaintiff and the individuals he organizes under the name FLARE USA hold a valid "deemed-granted" First Amendment demonstration permit for Columbus Plaza, issued by operation of law under 36 C.F.R. § 7.96(g)(3) after the National Park Service ("NPS") failed to deny their application within the required twenty-four (24) hours.

3. Despite this, and despite the availability of narrower, lawful tools, Defendants have asserted, without timely written closure documentation, without lawful revocation, and without meaningful notice, that Columbus Plaza is being "closed" for a construction project allegedly beginning on Wednesday, December 10, 2025, and that Plaintiff and his fellow demonstrators must uproot their continuous vigil and move to an inferior alternate site, Stanton Park.

4. A December 9, 2025 email from NPS Permit Chief Marisa Richardson concedes that: (a) Plaintiff and FLARE were verbally ordered to leave on December 8, 2025 before any written closure determination or public notice existed; (b) the formal closure notice and Record of Determination were only being posted "in short order" for the public to view; and (c) the proposed relocation amendment to Stanton Park was transmitted at the same time as the closure, not as the product of any prior, neutral process.

5. The "alternative" demonstration site, Stanton Park, is several blocks away in a largely residential area, with minimal pedestrian traffic, far from Union Station and the Capitol, and subject to conditions that fundamentally change the nature of Plaintiff's continuous 24/7 peaceful vigil, including a prohibition on tents or temporary structures.

6. Defendants' actions do not comply with NPS's own regulations governing area closures and public use limits, 36 C.F.R. §§ 1.5 and 1.7, nor with the special demonstration regulations for the National Capital Region at 36 C.F.R. § 7.96(g). They also constitute arbitrary and capricious action under the Administrative Procedure Act ("APA") and an unconstitutional prior restraint and viewpoint-based burden on core political speech in a traditional public forum.

7. Plaintiff therefore seeks declaratory and injunctive relief, including a Temporary Restraining Order and Preliminary Injunction, to prevent Defendants from evicting him and his fellow demonstrators from Columbus Plaza or treating their deemed-granted permit as invalid absent full compliance with applicable statutes, regulations, and the First Amendment.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the First Amendment and the APA, 5 U.S.C. §§ 701–706.

9. This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 702, 704, and 706.

10. Venue is proper in this district under 28 U.S.C. § 1391(e) because the events giving rise to this action occurred in the District of Columbia and Defendants reside in or perform their official duties in this district.

## PARTIES

11. Plaintiff **David Mytych** is an individual and a lead organizer of the FLARE USA demonstration at Columbus Plaza. He has been physically present at the demonstration on a daily or weekly basis since May 11, 2025. He has personally interacted with NPS, U.S. Park Police ("USPP"), U.S. Capitol Police, D.C. Metropolitan Police, and other federal officials regarding permitting, enforcement actions, and the threatened eviction at issue in this case.

12. **FLARE USA** is an all volunteer non-profit corporation of individuals committed to peaceful political expression and advocacy regarding authoritarianism, impeachment, and constitutional accountability. It is not named as a separate plaintiff in this action; rather, Plaintiff appears on his own behalf and as a lead organizer of the group's demonstration activity.

13. Defendant **National Park Service ("NPS")** is an agency of the United States Department of the Interior responsible for managing federal parklands, including Columbus Plaza, and for administering permits for First Amendment activities in the National Capital Region.

14. Defendant **Frank Lands** is the Deputy Director of Operations for NPS and has supervisory responsibility for operations in the NPS, including the promulgation and enforcement of regulations governing First Amendment activities and oversight of officials responsible for permit decisions and enforcement actions. He led the October 3, 2025 enforcement action against Plaintiff's demonstration. He is sued in his official capacity.

15. Defendant **Jennifer T. Nersesian** is the Regional Director, National Capital Region, NPS. She is responsible for approving or denying permit revocations under 36 C.F.R. § 7.96(g)(6), and for overall management of NPS activities in the National Capital Region. She is sued in her official capacity.

16. Defendant **Kevin Griess** is the Superintendent, National Mall and Memorial Parks ("NAMA"), an NPS unit that includes Columbus Plaza/Columbus Circle. On information and belief, he is the signatory on the December 9, 2025 Record of Determination closing Columbus Plaza. He is sued in his official capacity.

17. Defendant **Chad Tinney** is the Deputy Superintendent, National Mall and Memorial Parks, and he participated in the October 3, 2025 enforcement action against Plaintiff's demonstration. He is sued in his official capacity.

## FACTUAL BACKGROUND

### A. Plaintiff's Demonstration and Permits at Columbus Plaza

20. On or about May 11, 2025, Plaintiff and other individuals organized under the name FLARE USA began a continuous First Amendment demonstration at Columbus Plaza, in front of Union Station in Washington, D.C. The demonstration focuses on resisting authoritarianism, demanding constitutional accountability, and calling for impeachment of federal officials whom they believe have violated their oaths of office.

21. Columbus Plaza is a uniquely strategic public forum. It is the main pedestrian gateway between Union Station and the United States Capitol. Members of Congress, staff, federal employees, commuters, and visitors pass through daily. Plaintiff and his fellow demonstrators deliberately chose this location because of its symbolic and practical importance: it is where ordinary citizens and lawmakers intersect.

22. The demonstration includes signs, banners, petitions, informational materials, and modest temporary structures, including tents, tables, and weather protection that are necessary to sustain a continuous 24/7 vigil, including overnight presence in all weather.

23. Plaintiff and FLARE initially operated under a valid NPS First Amendment demonstration permit. As that permit approached expiration, they applied to continue their demonstration. On or about August 29, 2025, NPS reissued a permit for FLARE at Columbus Plaza, authorizing the continued demonstration and allowing temporary structures.

24. At all relevant times prior to the October 3, 2025 enforcement action described below, Plaintiff understood that the demonstration was operating in full compliance with NPS regulations and permit conditions.

### B. The October 3, 2025 Raid and Defective Revocation

25. On or about October 3, 2025, in the pre-dawn hours, Deputy Director Frank Lands and Deputy Superintendent Chad Tinney, acting under the authority of NPS and accompanied by USPP and armed U.S. Marshals, conducted an enforcement action at the demonstration at Columbus Plaza (the "October 3 Raid").

26. During the October 3 Raid, NPS officials ordered Plaintiff and other demonstrators to vacate their structures, asserting that they were no longer permitted to occupy the space as they had been.

27. At the time of the October 3 Raid, Plaintiff had not been served with any lawful written revocation of the permit that complied with 36 C.F.R. § 7.96(g)(6). In particular:

    a. There was no written revocation approved by the Regional Director;
    b. The alleged reasons for revocation were not set forth with specificity; and
    c. Plaintiff was provided no appeal rights or process.

28. A revocation document was given to FLARE USA, but not on official letterhead, was unsigned, did not identify who had approved it, did not clearly specify the regulatory grounds relied upon, and did not outline any process for appeal or reconsideration, in violation of 36 C.F.R. § 7.96(g)(6) and the APA, 5 U.S.C. § 706(2)(D).

29. During and after the raid, officials removed structures, equipment, supplies, petitions to the government, and personal property associated with the demonstration. Based on Plaintiff's knowledge of the items destroyed, the value of these items was approximately $10,000.

30. Defendants did not provide Plaintiff with any written inventory, receipt, chain-of-custody form, or other documentation listing the items seized, identifying the officers who took them, or stating where the items were stored.

31. Among the items seized were First Amendment expressive materials, including signs, banners, audio equipment, and art, as well as petitions containing personal identifying information of individuals who had signed declarations or statements supporting impeachment of the President

32. No warrant was presented to Plaintiff, no neutral magistrate approved the seizure of expressive materials, and Plaintiff had no meaningful opportunity to challenge or halt the raid.

33. After the raid, Plaintiff sought to determine who had actually authorized it. NPS Regional Director Jen Nersesian declined to identify the decision-maker and instead directed Plaintiff to file Freedom of Information Act requests if he wanted answers.

34. The October 3 Raid severely disrupted the demonstration, chilled participation by volunteers, and caused ongoing fear that any renewed effort would be met with sudden, unannounced force.

**C. Reapplication and Deemed-Granted Permit**

35. In the wake of the October 3 Raid, Plaintiff reapplied for a First Amendment demonstration permit for Columbus Plaza.

36. On November 7, 2025, Plaintiff submitted a new written permit application to NPS for a continuous 24/7 vigil at Columbus Plaza, including the use of temporary structures and overnight presence.

37. Under 36 C.F.R. § 7.96(g)(3), demonstration permit applications in the National Capital Region "are deemed granted, subject to all limitations and restrictions applicable to the park area, unless denied within 24 hours of receipt."

38. NPS did not deny Plaintiff's November 7 application within 24 hours. Nor did NPS invoke, in writing or otherwise, any exception to the deemed-grant rule.

39. Accordingly, Plaintiff's November 7 application became a valid permit by operation of law, a "deemed-granted" permit under § 7.96(g)(3).

40. On November 8, 2025, after the 24-hour window for denial had closed, the NPS Permit Office issued Permit No. EVNT25-1819 to the applicant of record, which eliminated the use of structures that had been requested in the original application. NPS had no authority to modify the application in this way after the statutory window had passed.

41. Permit No. EVNT25-1819 contained multiple inconsistencies and clerical errors, including incorrect references to dates and conditions, reflecting that it was hastily prepared and not the product of a lawful review of what the Plaintiff applied for.

42. Plaintiff relied on the deemed-granted permit and resumed a continuous, peaceful political demonstration at Columbus Plaza, erecting structures on November 9, 2025. NPS officials observed Plaintiff's ongoing presence and requested that he remove structures, but no lawful written order was given requiring removal.

43. On December 9, 2025, NPS prepared an amendment to Permit No. EVNT25-1819 that purported to modify permit terms and to relocate Plaintiff's demonstration to Stanton Park under more restrictive conditions. Plaintiff did not sign or agree to any such amendment originally and continued to rely on his deemed-granted permit.

### D. The December 8, 2025 Verbal Eviction Order

44. On or about the evening of December 8, 2025, NPS personnel, including Permit Chief Marisa Richardson, verbally informed Plaintiff that he and FLARE would have to remove their structures and vacate Columbus Plaza by 12:00 p.m. (noon) on December 10, 2025, allegedly because "construction" was going to start.

45. At the time of this verbal order, there was no written revocation of Plaintiff's permit, no written closure determination under 36 C.F.R. § 1.5, and no public notice under 36 C.F.R. § 1.7.

46. Plaintiff requested written documentation explaining the legal basis for this sudden eviction demand and pointing to any actual construction schedule. None was provided on December 8.

47. Plaintiff was thus given less than 48 hours' notice, initially only verbally, and no written record of the decision underpinning the threatened eviction.

### E. The December 9, 2025 Closure Notice, Record of Determination, and Relocation Amendment

49. On December 9, 2025, at approximately 6:13 p.m., NPS Permit Chief Marisa Richardson sent Plaintiff an email stating, in substance:

"As you were informed yesterday, Columbus Plaza is being closed to provide for public safety during a construction project set to begin this week… It is my understanding that a public notice of the closure will be posted to the park website and in Columbus Circle in short order, if it has not already been posted. Because Columbus Plaza will be closed, and thus is no longer suitable to your permitted activity, the NPS proposes Stanton Park as an alternative site for your demonstration… To that end, attached is a draft permit updating the location of your permitted activity for the remainder of the duration of your permit."

50. This email is an admission that:

    a. Plaintiff was told to leave on December 8 before any closure was posted or finalized;
    b. The closure notice and Record of Determination ("ROD") were being prepared and posted only after the verbal eviction decision; and
    c. The suggested relocation to Stanton Park was decided at the same time as the closure, not as a result of any prior, neutral evaluation of alternatives.

51. Attached to the December 9 email was a closure notice and Record of Determination purporting to close Columbus Plaza and for demonstrators to leave by 4:00 pm December 10, 2021 for "renovation of the fountain, cleaning of the statues, plaza and turf renovations," including "construction staging" associated with work on the Columbus Fountain.

52. The closure notice stated that the outer sidewalks surrounding Columbus Plaza would remain open to the public, but that the interior plaza area would be closed for an extended period from December 10, 2025 at 4:00 p.m. through June 1, 2026.

53. Also attached was a draft amended permit relocating Plaintiff's demonstration to Stanton Park. Stanton Park is several blocks from Union Station, located in a largely residential area, and does not offer comparable contact with Members of Congress, staff, or the same volume of public foot traffic.

54. The Stanton Park amendment imposed conditions that fundamentally altered the demonstration, including:

    a. Prohibiting all tents and temporary structures; and
    b. Significantly restricting the physical footprint and visibility of the demonstration.

55. These restrictions make a continuous vigil all but impossible, especially in winter conditions, and prevent Plaintiff from safely maintaining a 24-hour presence, protecting materials, providing safety to volunteers, and engaging passersby at all times.

56. Plaintiff has not agreed to or sign the Stanton Park amendment, nor did he agree that Permit No. 1819 lawfully supplanted his deemed-granted permit that included structures.

57. On information and belief, NPS nonetheless intends to treat the closure and the Stanton Park amendment as effective justification to evict Plaintiff from Columbus Plaza on December 10 or thereafter, despite the lack of a lawful revocation and the pretextual, after-the-fact timing of the closure documents.

58. At no point did NPS provide Plaintiff with:

    a. A written, Regional Director-approved revocation of the deemed-granted permit as required by § 7.96(g)(6);
    b. A closure determination under § 1.5 before the December 8 verbal eviction order; or
    c. Meaningful advance notice and opportunity to comment on or appeal the closure and relocation.

### F. Irreparable Harm

59. Plaintiff faces multiple, independently sufficient forms of irreparable harm. The D.C. Circuit and Supreme Court make clear that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); see also *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301–02 (D.C. Cir. 2006) (First Amendment injuries are "by their very nature" irreparable).

60. Plaintiff's demonstration at Columbus Plaza is a continuous 24/7 vigil during a uniquely time-sensitive political moment. The advocacy is directed specifically at Members of Congress and the public flowing through Union Station. Lost opportunities for political expression "at the moment it matters most" are irreparable because "there can be no do-over and no redress." *League of Women Voters v. Newby*, 838 F.3d 1, 9–12 (D.C. Cir. 2016).

61. Columbus Plaza is uniquely effective as a forum, providing direct access to congressional officials, staff, national media, and thousands of commuters. Relocating the demonstration to Stanton Park would sever this audience connection. The Supreme Court recognizes that location can be integral to expression and that access to sidewalks near government buildings is constitutionally significant. *United States v. Grace*, 461 U.S. 171, 180–81 (1983). Removal from a location that amplifies a message and reaches its intended audience constitutes irreparable harm because the expressive impact cannot be replicated elsewhere.
62. The continuity of Plaintiff's 24/7 vigil is itself expressive. Once dismantled, the symbolic force of sustained presence cannot be recreated. The Supreme Court has acknowledged that continuous occupation and overnight presence in connection with protest activity constitutes expressive conduct. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Courts in this district likewise recognize that long-term vigils, such as the Lafayette Park anti-nuclear protest, are core expressive activities whose disruption causes cognizable First Amendment injury. *Thomas v. News World Communications, Inc.*, 681 F. Supp. 55, 72 (D.D.C. 1988).
63. Eviction would also destroy months of established advocacy infrastructure, including structured engagement zones, signage, volunteer operations, and materials necessary for public education. Courts treat government action that "perceptibly impairs" an organization's ability to carry out its mission as a direct and irreparable injury. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *PETA v. USDA*, 797 F.3d 1087, 1094–95 (D.C. Cir. 2015).
64. The removal of structures eliminates the only means of protecting petitions and declarations containing personal identifying information. Each signature lost due to weather exposure, theft, or inability to secure materials is permanently lost. Courts have long held that interference with confidentiality and secure associational activity constitutes irreparable harm.
65. Volunteer participation, public engagement, and organizational momentum will likewise collapse if the demonstration is displaced to an unsuitable alternative location. Once volunteers disperse and public confidence declines, these harms cannot be unwound.
66. The October 3 warrantless raid and seizure of property already chilled Plaintiff's speech. A second eviction, under a shifting and unsubstantiated "construction" justification, creates a well-founded fear of further enforcement. A credible threat of enforcement causing self-censorship is itself a First Amendment injury supporting injunctive relief.
67. Forced removal also imposes reputational harm by creating the public impression that Plaintiff acted unlawfully or was removed for cause. Reputational harm and loss of goodwill are classic irreparable harms because they cannot be meaningfully compensated with money damages.
68. Additionally, eviction would extinguish the rights Plaintiff has been exercising under a deemed-granted NPS permit. The D.C. Circuit has held that the demonstration regulations, including the deemed-granted rule, exist precisely to prevent unlawful delay or suppression of protest activity. *A Quaker Action Group v. Morton*, 516 F.2d 717, 723–24 (D.C. Cir. 1975). Once that right is eliminated in practice, no later ruling can restore the lost period of First Amendment activity.

69. Finally, Plaintiff faces a credible risk of further warrantless seizures and retaliatory enforcement based on past conduct. Courts recognize that a demonstrated likelihood of repeated constitutional violations by the same officials warrants prospective relief. *City of Los Angeles v. Patel*, 576 U.S. 409, 419–20 (2015).
70. In sum, Plaintiff's harms are overwhelming, multi-layered, and irremediable. No damages remedy could restore the lost expressive opportunities, chilled participation, destroyed materials, broken continuity, or severed congressional access. Emergency injunctive relief is therefore required.

## CLAIMS FOR RELIEF

### COUNT I – Violation of the First Amendment

65. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

66. Columbus Plaza and its surrounding sidewalks are traditional public forums, where the government's ability to restrict expressive activity is sharply circumscribed.

67. Plaintiff's demonstration is core political speech about national policy, constitutional accountability, and impeachment, entitled to the highest First Amendment protection.

68. By raiding the demonstration on October 3, issuing a defective and unsigned "revocation," seizing property and expressive materials, ignoring a deemed-granted permit, and now ordering Plaintiff to vacate Columbus Plaza based on a post-hoc closure determination and relocation amendment, Defendants have imposed an unconstitutional prior restraint and a content and viewpoint-based burden on Plaintiff's speech.

69. The December 8 verbal eviction order preceded any written closure or Record of Determination and was not based on neutral, objective criteria. The December 9 closure and relocation documents were created and deployed after Plaintiff requested them to justify a pre-existing decision to remove Plaintiff, not as a product of a lawful, good-faith process.

70. Defendants' actions are not narrowly tailored to serve a compelling or significant governmental interest, are not reasonable time, place, and manner restrictions, and would fail even intermediate scrutiny.

71. Defendants' conduct has caused and will continue to cause Plaintiff irreparable harm absent declaratory and injunctive relief.

### COUNT II – Violation of the Administrative Procedure Act (5 U.S.C. § 706)

73. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

74. Defendants are bound by their own regulations, including 36 C.F.R. §§ 1.5, 1.7, and 7.96(g), which govern area closures, public use limits, and First Amendment demonstration permits.

75. By:
    a. Refusing to recognize Plaintiff's deemed-granted permit under § 7.96(g)(3);
    b. Failing to issue a valid, written revocation in accordance with § 7.96(g)(6);
    c. Conducting the October 3 Raid without lawful revocation or warrant;
    d. Issuing the December 8 verbal eviction order before any § 1.5 closure determination or § 1.7 public notice;
    e. Preparing a closure determination and providing notice to Plaintiff only after deciding to evict Plaintiff; and
    f. Attempting to relocate Plaintiff to a substantially inferior site under far more restrictive conditions,

Defendants have acted arbitrarily, capriciously, and contrary to law.

76. Defendants' actions were taken "without observance of procedure required by law" and must be set aside under 5 U.S.C. § 706(2)(D).

77. Plaintiff is entitled to judicial review and to declaratory and injunctive relief under the APA.

## COUNT III – Ultra Vires Agency Action

78. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

79. The regulations governing NPS closures and demonstration permits do not authorize Defendants to evict Plaintiff from a traditional public forum based on an after-the-fact closure adopted to justify a decision made verbally the day before.

80. Nor do they authorize Defendants to effectively extinguish a deemed-granted permit by issuing a unilateral relocation amendment that Plaintiff never agreed to and that fundamentally alters the nature of the permitted activity.

81. By attempting to evict Plaintiff under these circumstances, Defendants are acting beyond the scope of their lawful authority and engaging in ultra vires conduct.

82. This Court has inherent equitable power to enjoin ultra vires actions by federal officials.

## VERIFICATION

I, David Mytych, declare under penalty of perjury that the factual allegations in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Executed on December 10, 2025, in Washington, D.C.

/s/ David Mytych

**DAVID MYTYCH**
Plaintiff, pro se
PO Box 78080
Washington, DC 20013
484-326-4432
dem259@gmail.com

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Plaintiff's November 7, 2025 permit application was and is validly deemed granted under 36 C.F.R. § 7.96(g)(3) and has not been lawfully revoked;

B. Declare that Defendants' October 3, 2025 raid, seizure of property, and ongoing efforts to remove or restrict Plaintiff's demonstration at Columbus Plaza violated the First Amendment, the APA, and NPS regulations;

C. Declare that Defendants' December 8 verbal eviction order, December 9 closure determination, and December 9 Stanton Park relocation amendment are unlawful as applied to Plaintiff;

D. Issue a Temporary Restraining Order and Preliminary Injunction prohibiting Defendants, their officers, agents, employees, and all persons acting in concert with them from evicting Plaintiff and FLARE from Columbus Plaza or otherwise interfering with his ongoing demonstration absent full compliance with 36 C.F.R. §§ 1.5, 1.7, and 7.96(g) and the Constitution;

E. Enjoin Defendants from seizing or destroying Plaintiff's structures, equipment, or expressive materials associated with his Columbus Plaza demonstration, except as necessary to respond to a genuine and documented emergency presenting a clear and present danger, and then only with appropriate documentation and an opportunity to reclaim such property;

F. Grant such other and further relief as the Court deems just and proper.

Dated: December 10, 2025

Respectfully submitted,

/s/ David Mytych

**DAVID MYTYCH**
Plaintiff, pro se
PO Box 78080
Washington, DC 20013
484-326-4432
dem259@gmail.com

physical address:
2 Massachusetts Ave
Unit 78080
Washington DC 20013